We're now recording. Hear ye, hear ye, this Honorable Appellate Court for the Second Judicial District is now in session. The Honorable Robert D. McLaren presiding. Your Honors, the third case on the docket this morning is 2-21-0029, Enraged Commitment of Daniel A., the People of the State of Illinois Petitioner Appellee v. Daniel A., Respondent Appellant. Arguing on behalf of the Appellant, Ms. Laurel Spahn. Arguing on behalf of the Appellee, Ms. Diane L. Campbell. Thank you. Ms. Spahn, you may proceed. Ms. Spahn, you're still muted. Sorry, you'd think I'd be used to that by now. Sorry. We do it too. May it please the Court. My name is Laurel Spahn, and I am with the Legal Advocacy Service, and our office is the Appellate Council for Daniel A., the Respondent Appellant in this matter. The Mental Health Code's rules are considered vital to safeguard the liberty and autonomy interests of a respondent facing involuntary admission and involuntary treatment. All five districts of the Appellate Court and our Illinois Supreme Court have said that the procedural safeguards of the Mental Health Code are not mere technicalities, but they are essential tools to safeguard the liberty interests of mental health patients. Now, that is especially the case here, where we have a young man with no other inpatient admissions, no prior diagnosis, and who had never been prescribed psychotropic medication before. And this is a young man who could face ongoing consequences from mental health orders entered pursuant to the Mental Health Code that could affect his career prospects in physics engineering. Ms. Spahn, I would say the record is not exactly clear that back when he was in college, when he saw, I think, a psychiatrist or psychologist, he did not receive any sort of psychotropic medication. I thought the record indicated he had not. And I think the testimony indicates that he had not had psychotropic medication before. All right. Now, this appeal has three substantive issues. Number one is violation of the no combined hearing rule. Number two, violation of the requiring a written predispositional report. And then the third issue is, if these two other issues are considered forfeited, then ineffective assistance of counsel. And then this issue also includes the additional matter of the involuntary treatment petition, set forth conclusions only, and did not include facts to support those conclusions. The conclusions being setting forth the legal elements of the involuntary treatment statute. All right. Ms. Spahn, notwithstanding the Supreme Court directive, the statutory directive, and as you said, all five districts have spoken to this, these parties all agreed, at least on the face of this hearing. And is there anything here that indicates why they agreed to that, other than judicial efficiency, which I think was raised by defense counsel? Or respondents? Well, no. One of the things I would ask this court to consider is that none of the actors here appeared to know of these requirements. Or if they knew, they did not think these requirements were important. And, but I don't think, I think the answer is they were not aware of this no combined hearings rule requirement. And I think the record indicates, I'm sorry, I guess I just want to say there's nothing in the record to indicate that there was a problem with the pandemic warranted, having these hearings combined. And when I was practicing this oral argument, one of my colleagues said, you know, it's really easier to have separate hearings by Zoom because witnesses can go about their business like a busy doctor can finish with testimony, go off and see other patients, whatever, while a hearing, one hearing proceeds. When there is another hearing later on, they can be called back to come again and log back into Zoom. So it's not the same as waiting outside a courtroom to be called back. Would it be the same error if the court had said, I will allow testimony of the doctor on the first hearing, but as long as she's here, while she's here, I will allow direct and cross on the secondary issue, should that become at issue? Yes, because it's a combined hearing. And let's talk about, let's talk about the, the, let's talk about that combined hearing and why there are reasons for having those hearings separate. The standard for mental illness is separate for commitment versus involuntary treatment. A commitment hearing requires mental illness in general. A medication, involuntary treatment proceeding requires serious mental illness, a higher degree of mental illness. There are separate forms of treatment with involuntary commitment versus involuntary treatment. With involuntary commitment, the treatment is milieu treatment in a structured setting, as opposed to treatment with an involuntary treatment proceeding. That treatment is administering chemical substances or electroconvulsive therapy over a person's objection. With, there are different elements to prove in the two cases. With involuntary commitment, there's that general mental illness, that lesser degree of mental illness and active or passive harm. With involuntary treatment, there's serious mental illness, along with multiple elements, including lack of capacity, benefits versus risks, testing, provision of written information about the treatment, among other elements. There are different collateral consequences with the two proceedings. With involuntary commitment, or only involuntary commitment requires reporting to the state police for firearm owner identification card, for example. And persons who are involuntarily committed may still have capacity to consent to or refuse treatment. The harm is when these two proceedings are combined, the trial court, even the most impartial trial court, may commingle the testimony. That's exactly what happened here. In this case, the trial judge indicated in his ruling that he relied on the combined testimony in committing Daniel. This is what the trial court said. Based upon the testimony that I have heard, and having considered the type of treatment that Dr. McMaster's proposed, which was involuntary medication, I find that the Northwestern Hospital facility on Doty Road in Woodstock, Illinois, is a mental health facility that's environment for Daniel. Dr. McMaster's testified that there really is no other type of treatment that is appropriate in this particular case. So this combined hearing deprived Daniel and his counsel of adjusting or adapting to the decision in one case, and then deciding how to proceed in the second case, or modifying the way they would proceed. Well, Ms. Spahn, let me ask, since they can be heard one after the other, I believe that would be permitted, and we're going to assume it's the same judge sitting unless we switch judges between the two hearings, what's to say that he or she, in this case he, isn't also going to consider the medication to be administered in his initial decision, or knowing that medication is likely to be required? Well, I guess that's speculation at this point, Judge. Maybe the judge is going to be thinking that way, but with a separate hearing, things may change because there is different evidence to be produced. And, you know, with a separate hearing, for example, the commitment hearing may have gone first. If the commitment hearing went first, and the court found Daniel subject to commitment, circumstances have changed. And then there's a chance for Daniel to say, well, in the medication hearing, I would now like an independent examination. I would like to exercise my right to an independent examination. Or maybe Daniel would say, you know what, now that I'm going to be here, I would like to talk with the doctor again about medication. And maybe Daniel would have consented. Maybe there would have been a postponement of the medication. Counsel, would you agree that if he wasn't committed, then the second proceeding would be moot? That's a, yes. If there had been a denial of the medication proceeding, most likely... No, I'm saying denial of the commitment wouldn't... Oh, I'm sorry. Yes. Medication proceeding, moot. Right. And the state does recognize that the medication was reliant on Daniel being committed to the hospital. Sometimes there are reasons... I think it has something to do more with the possibility, factually, or the reality of cause and effect more than the practicality. The system is supposed to operate in a rational way based upon a timeline that appears to be logical. And so I'm looking at this more in the sense of common sense or logic and not necessarily on the statutory authority. Because if you're talking about statutory authority, you are now getting into a question of if somebody is really bonkers, is it error or is it harmless error? And your argument, although logical and enlightening, doesn't seem to be addressing whether or not there was harmless error here insofar as this particular individual is concerned. Your Honor, I'm a little... Forgive me, but I'm a little troubled by the use of the term bonkers in talking about persons with mental illness coming from an appellate judge. The evidence is so manifest that the person is not only in need of commitment, but is in need of medication. And you've raised one or two issues about maybe he wants to talk to somebody again based upon commitment or whatever. But would you address whether or not this is harmless error or whether or not it's prejudicial? Because I believe all these cases are sui generis, which means that there have to be in the realm of possibility and probably probability where the evidence is so manifest that error was harmless. You see my point or not? I'm trying to see your point. I don't know that these are sui generis cases. Mental health cases are considered civil cases, just like any other civil cases. Each case is different because each case is based upon a human's existence and the relation of that human to society and to their own personal well-being. So the facts in this case obviously can be much different, much more extreme, much less extreme than the case we heard last week. That's what sui generis means. It means you judge each case on its own right. Judge, the state Supreme Court and the appellate court has also said that mental health cases are treated differently because we've allowed them to be treated differently. And the rules are in place to be followed and to protect individual rights. And this separate hearings rule was decided in 1998 by the Illinois Supreme Court. It's been in existence since 1995. Does that mean that every single infraction is ipso facto prejudicial and requires reversal? Or is it possible that the evidence is so manifest that harmless error was deemed appropriate? You're basically telling me that because things are treated differently in this instance, that therefore there can never be harmless error. At least that seems to be the syllogism that you're putting forth. Judge, I don't think there was harmless error in this case where the commingled testimony was used to find for commitment for this individual. And this is a clear violation of the statute. It's a clear violation. In addition, it was not objected to by counsel. The state's attorney did not seem to be aware of it. And the trial court did not seem to be aware of this requirement. So this is not harmless error. It's going to keep happening in a place like McHenry County if this court doesn't address it. I see that my time is up. I have more to address. I don't know if the court would like me to continue with my argument. Analysts, do you want to give her an additional time? I don't have any additional questions at this point, but it's up to presiding and my colleague. No, you will have an opportunity for rebuttal. Okay. Thank you. Thank you, your honors. Thank you. Ms. Campbell, you may proceed. Thank you, your honors. I have several points. I would like to briefly address some of the mootness argument, which does say that cases are taken on a case-by-case basis. But first, I will address whether it can be harmless error or not reversible error for the separate hearings. I have several cases to cite. In Renow, which I cite in my brief, and in now it is at 419, reversal of an order is not warranted based on the procedural defect that could and should have been objected to immediately, could have been easily cured if timely objected to, and made no difference anyway. And now cites to both Splett and Robinson. And in the state's failure to strictly comply with provisions of a code may be excused if the record establishes that the purposes of the statute have been achieved. And then later at 131 in Robinson, society's interest in providing treatment to mentally ill while protecting citizens from harmful conduct need not be jeopardized where the record in involuntary admission hearing establishes that the purposes of the statutes requirement are met and the respondent had not objected to the claim error in the proceeding. In Alaca W, oh, in Marcus S at 41, which I cited my brief at 18, the courts differentiated between the state's total noncompliance with requirements. And then in Alaca W, the court quotes from Barbara H, where the Supreme Court expressed and said that the Supreme Court had expressed its preference for strict compliance. But in that case, when reviewing it, I detected six particular errors that the appellate court found that state had not proven in compliance with a statute, in addition to the seventh would have which would have been the combined hearing. But Miss Campbell, I'd rather than go, you've identified your cases, but when the court says preference in Barbara, the statute calls for that. The calls for the, the separate hearings. Yes. And there are lots of, as you've indicated in Barbara, there are several errors identified. And we don't know exactly which one that the court is talking about. I think when they mentioned preference, do we? In Barbara H, the particular cause for reversal in that case was denial of defendants right to counsel. And I believe the court found that it had, the proceeding was had degenerated to like a mere formality, rather than, you know, complying with the statute. So I think it's the extreme occasions. And I disagree that that's what happened here. And if well, here, I mean, here, counsel also argues that the attorney was incompetent for failure to recognize that his clients was entitled to a separate hearing, and had different rights at each of those hearings. So doesn't that equate to lack of attorney, you have an attorney that is doing anything for you, because they're they have a pulse and taking up a chair isn't exactly having counsel. I don't agree that he was a non advocate for his client. I and I think there is a very valid strategic reason why he would agree to the combined testimony. First of all, it came at the end of the doctor's testimony regarding the involuntary admission. So the state which has the burden of proof, you know, that was set forth on that. And then I will talk more about the invited here. But the strategic reason for defense counsel to agree to the combined hearing, aside from the technical novelty, which I will also go into a minute, is that in this case, his client would only be subject to having to testify in one proceeding. And then even more important, subject to only one cross examination. I think it is a general accepted fact that testifying in court can be while it can be therapeutic, it can also be highly stressful. Is that anywhere in the record? And anything about therapeutic issues with respect to how many times you testify or whether you're subject to cross twice? It is not in that. Okay, it is my conclusion that it would be a strategic advantage to only have his client subject to one testimony. I think the subsequent testimony shows that he reacts aggressively when he is contradicted or disagreed with. And that's through both the mother's testimony and the doctor's testimony regarding his actions in the emergency room. So I think that is a reasonable inference. But I will go into some of the circumstances which justified in this case, having it. There are some preliminary arguments on my brief at page 19. And then the direct testimony is going to be on page 20. So the judge introduced himself as the chief judge of the circuit. He says that there is sufficient reason for zoom proceedings due to the COVID-19. There were various introductory periods where the parties are assembling on the zoom and they're and then the court announces that there are two petitions and that he is going to proceed on the first petition specifying the involuntary admission. Then they ask about the witnesses, which are going to peer, which is Dr. McMaster's and the respondents mother by the state. And at that point, respondents counsel advocating for him notes that asked the judge to caution that the father who is not a witness but present with the mother in her zoom setting cannot communicate with the mother while she's testifying or during her testimony. And the judge does give the mother that caution and says, you know, essentially you're on your own, don't communicate during the testimony. And then the court said, let me see if I can do this without quote goofing it up. This is on my brief at page 20 and it's in the record at 43. A voice says new world judge. And then the court says, hopefully I have successfully put Mrs. A in the waiting room under a mute function too. That's at R43. So I think it's showing the novelty and the, the hesitancy on the judge on whether he's going to be able to successfully move people in and out of the zoom waiting rooms. And that would include, you know, if you have the dual hearings the doctor is going to have to come in. That that court's reluctance to use its zoom features is a basis to abrogate statutory requirements. I am not. I am saying that so perhaps you might want to move on. Okay. Then I'll go to the exact moment of the combination of the hearing. And that is also on my brief at page 20. The state has finished with the direct examination of Dr. McMaster's. And he said that he's done with respect to the involuntary admission petition. But as I said, I have further questions regarding the treatment. So I, and then the court interrupts and says, well, at this point in time, the witness would be tendered to Mr. Moralato's. I hope I'm saying his name, right? Respondents council for cross examination. Unless there is some agreement between you and respondents council to take Dr. McMaster's testimony for both petitions and then have Mr. Respondents council cross on both. I don't know how the respondent wants to proceed Mr. Moralato's. And then respondents council says your honor for judicial efficiency. If we can ask Dr. McMaster's questions pertaining to the involuntary treatment, and I can collectively then cross examine her. And the court said that would be fine. The court will allow that to happen. And that's it are 58 to 59. And I know the court's use of the word allow. And throughout the proceedings, the court is very firm that there are two petitions, and he announces he's proceeding first on the first one. And then even more importantly, the court announces separate findings. And that is on page 22 of my stated at this time, the court will make its findings and rulings on each particular petition, beginning with 20. MH 11, the petition for voluntary admission, that's at 147. And then he finds the respondent subject to involuntary admission at 150. And that hospitalization was least restrictive alternative at 150. And then orders hospitalization for no more than 90 days in a status state hearing at 151. Only Miss Campbell, where is Judge Collins authority to allow this to occur? Where I find that? I think that is the judge exercising his discretion. As I said, this was an invited error. And the respondent has not objected. I explained that, you know, it could be a strategic advantage not to have his client subject to two cross examinations. And I think overall, given the context of the court's that it's not reversible error, if the state doesn't comply with a statutory requirement, given the fact that the defendant has not objected, and in this case, actually, you know, participated and invited in the air. I think that this is not a reversible error situation in this particular case. But it's also it's it's not the state's decision to hold a separate hearing. It's the court's obligation, according to the statute to hold a separate hearing. So I mean, the state could say, yeah, let's just put them in and you know, and it's fine. Let's go. I'll go to lunch. I mean, it's I don't care what the state said, I guess is what I'm saying. What the what the court's obligation was under these circumstances. Briefly in the state's defense, they didn't actually say anything they were the they did not object. That is true. But again, it is invited air because the judge specifically asked respondents counsel if he wanted to proceed in that manner. And he in fact, said that he did want to that part of the invited air doctrine is that the state is not then given the opportunity to cure the defect. Clearly, they could have objected. But I think in this case, when the trial judge was in fact specifying that he was aware of the separate petitions and then proceeded, you know, obviously in compliance with the statute, first on just the involuntary admission hearing. And then, you know, when the state had concluded its examination of the doctor probably, well, actually, the doctor and respondents mother were both very important. But the mother's testimony would obviously be geared much more towards the involuntary admission. And the doctor would be on both. But in this case, there was a lack of any harm. And I think Justice McLaren might have pointed this out. The evidence, I think was overwhelming regarding his condition. And while my opposing counsel argued that it was intermingling of testimony, I don't agree. In the involuntary medication, obviously, the doctor would be addressing dosage, the particular medications, whether the respondent had gotten rid of written notice of the side effects, the side effects, that sort of information, but a vital part of finding that the defendant needed to be involuntarily admitted and subjected to hospitalization would have been the severity of his condition and the fact that the doctor testified that his condition was not amenable to outpatient treatment and that, in fact, he needed involuntary medication. My opposing counsel pointed out that he had not received prior involuntary medications. And I believe that is correct from the record, including when he was examined when he was in college. But obviously, if you are administering involuntary medications, it's better to do it in an inpatient setting where he will be under supervision. There was also his statements, you know, oh, my time is up. I think I may have covered that point. Do you have any other arguments? And can I briefly address the mootness doctrine? Justice McLaren, you're mooted. Muted. Unmute. Mute. Mute. Mute. Justice McLaren, you're on there. There we go. I said you were mooted, but I meant you were muted. I'm a deaf mute. Never. Do you have any other questions, panelists? I do not. I don't. Actually, I think, you know, your arguments on mootness are pretty clear in the briefs. Counsel had noted that I had not addressed Merrilee M. in her reply brief. And if I can briefly just distinguish that case from the present one, or are you fine? Justice McLaren, I think he said go ahead. Okay. In Merrilee M., that respondent was at the time of the hearing and the petitions actively engaged in her nursing career as she had been for like the past, a long span of time. In this case, the respondent was not at the time of the hearing engaged in his There was a five-year gap before he got an engineering job, which was 2018 to 2020, from which he was fired. He said that he left because they asked him to do something unethical. But regardless, he would not have received a glowing recommendation for further engineering from his one and only engineering job. Subsequent to that, he moved in with his parents because of financial problems. His sister got him a cash-only job cleaning houses because he wanted to stay off of the grid. So I think it's clear that under L.K., the adjudication was not the sole reason that would have prevented his from being fired. I guess I just have a couple of things I'd like to respond to. And one of the things is that the state does have an important role in involuntary mental health cases. There was a reference during the state's argument to the defendant. And first of all, mental health respondents are respondents. They're not defendants. They're not criminals. If there is in fact a mental illness and not a substance abuse issue, then they are mental health respondents. And I would point out, as I did in the reply brief, a respondent does not have to raise every single possible issue in an appeal. And when there are some very clear issues of law, those are what we try to focus on. Can I ask you, what about the issue of invited error? Yeah, invited error is not anything that has ever been applied in a mental health case. And this would be the first time that it would be done if this court accepts the state's invitation to do so. And in this case, who invited the error? The trial court. The trial court said, counsels, is there some kind of agreement here? And then yes, unfortunately it was the we want to extrapolate further, is that just something that happens in McHenry County? Is that how they do these cases? We don't have a whole lot of appeals from McHenry County. So we don't know if that's the practice there. Maybe that's the practice. And even in this case- But counsel, with all due respect, that is outside the record what the overall practice is. But what isn't outside the record, Your Honor, is that this case is before this court based on our offices filing a motion for leave to file late notices of appeal in this matter, because the public defender had missed the respondent's request to even file notices of appeal within the 30 days. So these cases are maybe not given the kind of consideration that they should. And to the public defender's credit, that person contacted our office and asked for help with making sure that the respondent's rights were protected here. But the respondent had attempted to contact his trial counsel and asked to appeal, but that didn't happen within a timely manner. So this court granted leave to file late notices of appeal in each case. And then we asked to consolidate the matter for appeal because the record was all one. It was all combined. Let's, Ms. Bond, if we could, let's go back to harmless error versus error that is harmful. Yes. Harmless. Counsel cited some issues where the court has made some, what can we say, concession to the concept. What's your position on harmless error generally in these types of cases? These errors are not harmless, Your Honor. These rules are put into the statute to protect respondent's rights. And as I said, in my opening part of this argument, there are several reasons, good reasons for separate hearings. Commitment cases are one type of case with a completely different standard. Involuntary treatment cases are a separate type of case. They have different case numbers because they are completely separate. They do not have to be heard at the same time on the same date. And there are good reasons for having them done separately. A medication case, there can even be a strategic reason for doing a medication case before doing a commitment case, because if a medication case is heard and there is a denial of the medication case, then the commitment case is going to go away because in our experience, a commitment case is not going to stay on the books because the hospital will dismiss it. And in reverse, Justice McLaren, you said, well, if the commitment petition is denied, the medication case is going to go away. So there are reasons to do these one at a time. And there's a change of circumstance. If one case is heard and an order is granted, then counsel has the opportunity to talk with the respondent to say, look, there's been a huge change of circumstance now. I see my time is up. Can I finish this thought? There's been a huge change of circumstance. And let's regroup and figure out how we're going to address this now. So the state's concept that this was a strategic decision is, it's hard coming from the legal advocacy service where we are appointed counsel in most of the trial cases around the state to figure out how this was some kind of a strategy. I would just finally like to point out that both the no combined hearings rule and the written predispositional report have been around for about 30 years. And in the Alaka W case in 2008, that appellate court said, why are we still letting people ignore the addition of the word written to the dispositional report rule that was post the Supreme Court's Robinson case. So I would ask this court to please give consideration to these important requirements in the mental health code and to not just say the mental health code is some kind of a guideline that can be ignored. And for the state to speak up on behalf of respondents too. And I just have one more thing to say about the Marylee M case, if I might. Marylee M was an older person at the end of her nursing career. Daniel was 30 years old at the time this order was entered. Now, two years later, he's 32 years old and at the start of his career. If anyone should have a chance and should not have to of a doctor seeing him for the first time and filing both a commitment and a medication petition after seeing him once and deciding here's your diagnosis and here's medication that you should have. If anyone should not have to suffer the collateral consequence of that type of action, it's a young man starting out on his career. Thank you. We'd ask you to reverse these orders. Thank you. We'll take the case under advisement. Mr. Marshall, you may close out the case. Thank you both for your arguments this morning. Thank you.